[No. D059605. Fourth Dist., Div. One. Oct. 17, 2012.]

JOHN YOUNG, Plaintiff and Appellant, v.
TRI-CITY HEALTHCARE DISTRICT, Defendant and Respondent.

36

## Counsel

Spiegel Liao & Kagay and Charles M. Kagay for Plaintiff and Appellant.

DiCaro, Coppo & Popcke, Carlo Coppo, Michael R. Popcke, Derek Wilson; Greines, Martin, Stein & Richland, Irving H. Greines and Alana H. Rotter for Defendant and Respondent.

## Opinion

**HUFFMAN, J.**—Petitioner and appellant John Young, M.D., brought these proceedings for a writ of administrative mandate to challenge the decision of the board of directors of respondent Tri-City Healthcare District (the Board or the District) to terminate his medical staff privileges at its hospital. (Code Civ.

Proc., § 1094.5; all statutory references are to this code unless noted.) Young's amended petition contains seven causes of action that challenge both the March 29, 2009 final decision of termination (the termination decision) and an earlier, "interlocked" December 18, 2008 summary suspension (the summary suspension). Regarding each, Young sought judicial review of the administrative record and an order entitling him to reinstatement and costs of suit.

Young's appeal arises from the trial court's ruling, ultimately issued after three hard-fought phases of reconsideration motion hearings and other procedural developments, to grant the District's special motion to strike the fifth cause of action, which specifically challenged Young's cause of action for relief from the summary suspension. (§ 425.16; the anti-SLAPP statute.) The District contended in its motion that any of its alleged misconduct arose solely from protected free speech and official activity within the meaning of the anti-SLAPP statute, i.e., the conduct of hospital peer review proceedings. (§ 425.16, subd. (e)(1), (2).) It also argued that Young had failed to exhaust his administrative remedies in connection with the summary suspension, by agreeing to mediate the disputes, but then failing to further pursue his administrative remedies on that particular subject, when mediation failed. Young replied to the District's claims by asserting it would have been futile to further pursue any such administrative remedies, so that the requirement of exhaustion of remedies is inapplicable to this fifth cause of action. (See *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 475 [131 Cal.Rptr. 90, 551 P.2d 410].) The court reached several different results during the reconsideration proceedings, giving rise to Young's appeal.

I

### PROCEDURAL CONTEXT AND APPROACH TO ISSUES

In the order which Young appeals (the February 2011 order), the trial court essentially adhered to its initial grant of the District's motion to strike the fifth cause of action (granted in June 2010). However, the current result was reached after a July 2010 issuance of an order of dismissal of the "entire action," and the court's August 4, 2010 minute order subsequently attempting to correct it by restricting the dismissal to the fifth cause of action. This February 2011 order followed two reconsideration hearings. In October 2010, Young prevailed on his motion to reconsider the initial grant of the District's motion to strike, and the District filed a notice of appeal of that October order. (*Young v. Tri-City Healthcare Dist.* (D059092, filed Dec. 21, 2010, abandoned Mar. 2, 2011).) In the interim (Nov. 2010), the District filed its own motion to reconsider the same subject matter, giving rise to the subject order that Young appeals, and the District subsequently abandoned its own, earlier appeal.

Our task is to examine this convoluted procedural record and determine which of these various rulings issued by the trial court has all the required jurisdictional and substantive support. Because of the parallel tracks being followed regarding this sequence of anti-SLAPP rulings (reconsideration and the District's appeal), the terms of section 916, subdivision (a) are clearly invoked, that the perfecting of an appeal generally stays proceedings in the trial court "upon the judgment or order appealed from or upon the matters embraced therein or affected thereby . . . ." (See *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 198 [25 Cal.Rptr.3d 298, 106 P.3d 958] (*Varian*) ["[S]ection 916, as a matter of logic and policy, divests the trial court of jurisdiction over the subject matter on appeal—i.e., jurisdiction in its fundamental sense. [Citation.] The purpose of the automatic stay under section 916 is to preserve 'the status quo until the appeal is decided' [citation], by maintaining 'the rights of the parties in the same condition they were before the order was made' [citation]. Otherwise, the trial court could render the 'appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' [Citation.]"].)

Exceptions to the stays under section 916 that are created by appeals have been developed for collateral matters, such as statutory new trial motions or motions for judgment notwithstanding the verdict. (*Neff v. Ernst* (1957) 48 Cal.2d 628, 633–634 [311 P.2d 849]; *Foggy v. Ralph F. Clark & Associates, Inc.* (1987) 192 Cal.App.3d 1204, 1210–1211 [238 Cal.Rptr. 130] (*Foggy*).) The parties dispute whether this sequence of reconsideration motions is equivalent to such a "collateral" matter to the underlying ruling. It is not. We will address these issues by first identifying the legal effect of these reconsideration proceedings, as well as the trial court's signing, but recalling as erroneous, a dismissal order for the entire petition. We can then determine the effect upon the trial court proceedings of the District's separate appeal that it filed in the midst of its trial court litigation (but subsequently abandoned; Cal. Rules of Court, rule 8.244(b)(1)).

We resolve Young's appeal by concluding, initially, that the trial court had the power to correct its clerical error of apparently dismissing the entire action, when only the fifth cause of action had been brought before it in the anti-SLAPP motion proceedings, and only the fifth cause of action was the subject of that ruling. The trial court's action was proper and left the action pending, as a whole.

More importantly, we conclude that the trial court lost subject matter jurisdiction over the second reconsideration motion, and it had no authority to issue the February 2011 order, because the filing and perfecting of the District's own appeal caused the trial court to lose its authority to resolve the District's own reconsideration motion, which was still pending when its own

appeal was filed. (§ 916, subd. (a).) This was not the type of collateral matter that the trial court could pursue after the appeal was filed. (*Varian, supra,* 35 Cal.4th at pp. 191–194.) (Pts. III–IV, *post.*) The practical effect of our decision is that the February 2011 order is vacated, leaving the October 2010 order denying the motion to strike in place, on the merits of the anti-SLAPP issues.

We could stop there, but in an abundance of caution, our review will next be directed toward the substance of the June and October 2010 orders. The parties each make substantive arguments about the merits of the ruling on the anti-SLAPP motion to strike the fifth cause of action. This requires us to consider whether Young's petition for writ of administrative mandate to compel a hearing on his summary suspension "arose out of" the District's protected free speech conduct in the hospital peer review context. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].) In the context of a hospital staff physician's tort action for damages, the Supreme Court determined in *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 196–197 [46 Cal.Rptr.3d 41, 138 P.3d 193] (*Kibler*) that the anti-SLAPP procedure may properly be raised in defense by a hospital district, because those defamation and other allegations of injury arose directly out of protected peer review recommendations.

 Nothing in the anti-SLAPP statute wholly exempts a writ petition against a public entity from its potential coverage of protected speech. (§§ 425.16, 1085, 1094.5; *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 353 [22 Cal.Rptr.3d 724] (*San Ramon*).) However, on de novo review, we conclude the fifth cause of action does not "arise" from the District's acts in furtherance of its rights of petition or free speech in connection with peer review (a public issue), but rather, the substance of that cause of action arises from the statutory provision giving a right to judicial review of a governmental decision, and the making of such a decision does not in itself amount to an exercise of free speech. (*San Ramon, supra,* at p. 355; § 425.16, subd. (b)(1).) The anti-SLAPP statutory protections do not clearly apply as a matter of law. (Pt. V, *post.*)

We reverse the February 9, 2011 order with directions to the trial court to reinstate its October 26, 2010 order and to allow such further proceedings as are appropriate on the amended petition as a whole.

II

## BACKGROUND FACTS; THREE PHASES OF MOTION PROCEEDINGS

We outline the bare bones of the history of this case as necessary to address the jurisdictional and legal issues presented, regarding the interplay of section 916 imposing stays on appeal, and the reconsideration and anti-SLAPP statutory schemes.

### A. Nature of Disputes; Young's Administrative Appeals

In 2006, Young, a cardiopulmonary surgeon, held privileges in his field at the District's hospital. The Board governs the hospital. The hospital's medical staff is governed by a medical executive committee (MEC), which conducts peer review proceedings designed to ensure the quality of care provided at the hospital. Under District and hospital bylaws, a practitioner dissatisfied with actions carried out by the MEC may appeal to a judicial review committee (JRC).

In his amended petition, Young lays out the facts of certain conflicts that he had from 2006 forward, with fellow practitioners and District administrators, about the adequacy of the standard of care provided by Young and by other practitioners. Starting in November of 2006, the MEC had an ad hoc committee make an investigation into Young's treatment of patients and their relatives and his behavior. In June 2007, the MEC recommended that Young's staff privileges be permanently terminated for inappropriate care that was below standards.

Young invoked his right to challenge the termination before the JRC, and continued to carry out his practice. The JRC hearings went on from December 2007 through August 2008. The JRC issued its decision in September of 2008, adopting the MEC recommendation and terminating Young's staff privileges.

On September 19, 2008, Young appealed to the Board. The workplace conflicts continued, and on December 18, 2008, the hospital's chief of medical staff (Dr. Richard Burruss, assisted by MEC counsel, Arthur R. Chenen) ordered that he be summarily suspended, and the MEC confirmed the suspension December 23, 2008. On December 26, 2008, Young filed another appeal to the JRC, concerning the suspension. On January 2, 2009, the District filed a report of the suspension of privileges with the Medical Board of California, pursuant to Business and Professions Code section 805, subdivisions (b) and (e) (reporting requirements).

In January 2009, Young and the District agreed to mediate their disputes and that the Board would not take final action during mediation. They attempted to but could not agree on the format of mediation, and no resolution was reached. On April 15, 2009, the Board issued its decision affirming the JRC decision to finally terminate Young's staff privileges.

### B. Petition for Writ of Administrative Mandate; Motion Proceedings, Phase I

In October 2009, Young filed his petition for writ of administrative mandate, as amended, contending the MEC, the JRC, and the Board denied him fair procedure, and the termination decision lacked substantial support in the evidence. He sought judicial review of the administrative record, and an order for reinstatement and costs. In the fifth cause of action, he sought an order determining that the December 2008 summary suspension was unjustified, based on improper review of his records, carried out by unqualified committees, and unsupported by substantial evidence, so it should be vacated.

The District filed its answer and further responded by filing its motion to strike the fifth cause of action, expressly stating that this was the only cause of action relevant to the anti-SLAPP motion procedure. The District identified the core issue before the court as whether Young had exhausted his internal administrative remedies as to the summary suspension, before the petition was filed. The District described the notification given about Young's right to appeal the summary suspension, but contended that Young did not adequately follow through to identify an arbitrator. The District agreed to stay the summary suspension pending mediation, but nothing further was done to pursue the arbitration. The District's motion did not address the merits of Young's remaining six causes of action.

Young opposed the motion in propria persona, attaching copies of numerous documents on which he was relying (records of the discipline proceedings). At the June 14, 2010 hearing, the court conditionally denied the motion, subject to Young filing further materials to support his arguments, and provided for its issuance of a further ruling. Young supplied some authentications of his documents, but in the minute order of June 23, 2010, the court stated that those additional materials had failed to adequately oppose the merits of the motion, and it was granted.

The court signed an order July 12, 2010, stating that the "entire action" was dismissed, although the court interlineated it to state that the action was dismissed "without prejudice." However, on August 4, 2010, the court sua sponte sent out a minute order that modified or corrected the underlying June 23, 2010 minute order (the one later formalized in the July 12, 2010 order),

by deleting the last paragraph (which had stated the anti-SLAPP ruling disposed of the entire action and the "entire action" was dismissed).

### C. Motion Proceedings, Phase II: Reconsideration Granted for Young

Meanwhile, on July 2, 2010, Young filed his reconsideration motion, explaining that he, as an in propria persona litigant, had not understood his prior opportunity given him by the court to provide more information, and he was now supplying an amended declaration to more fully support his claims. Among other things, his declaration stated that he was induced by the actions of the District to have the reasonable belief that he need not pursue his second appeal to the JRC regarding the summary suspension, because it would not serve any useful purpose and it would not mitigate the harmful effects of the District's reports made to the Medical Board of California and to other authorities, about his summary suspension and, later, about the termination of his privileges. He contended that the burden was on the District to reactivate his second administrative appeal request, once the negotiations and mediation fell through.

In opposition filed August 27, 2010, the District argued that the entire action had already been dismissed in the July 12 order, and in any case, Young had not made any adequate showing of new or different facts, as required by section 1008.

The court heard the reconsideration arguments and on October 26, 2010, issued a minute order vacating the "judgment," because the June order had "erroneously included language finding the ruling to be dispositive of the entire action" and that the ruling "was not dispositive of the entire petition."

Also, the October 26 minute order granted Young's motion for reconsideration, determining that exhaustion of administrative remedies regarding the summary suspension would have been futile because an official report had already been filed with the Medical Board of California while the internal review of Young's termination was proceeding.

### D. Phase III of Motion Proceedings; Related Appeal by the District of the Phase II Ruling

The District promptly filed its own motion for reconsideration, contending the July 2010 dismissal remained valid, or alternatively, the anti-SLAPP motion to strike was well taken, because Young had not successfully shown it would have been futile to exhaust his administrative remedies. For example, if Young had obtained reversal of the summary suspension, administratively,

he could possibly have sued the District for damages, but he did not pursue a separate appeal after mediation fell through. The District sought an award of attorney fees (not at issue on appeal).

While the District's motion for reconsideration was pending, the District filed on December 21, 2010, its notice of appeal from the October 26 ruling on Young's successful motion for reconsideration. (*Young v. Tri-City Healthcare Dist., supra*, D059092 [the District's appeal].)

### E. Phase III Ruling; the District Abandons Its Appeal; Young Files the Current Appeal

After hearing argument, the trial court issued its February 2011 minute order granting the District's motion for reconsideration, while also upholding its own prior correction of the erroneous July 12 order that had purported to dismiss the entire action. On March 1, 2011, the District filed an abandonment of its appeal of the October order.

On April 4, 2011, Young appealed the February 2011 order granting reconsideration, since it had effectively granted the motion to strike his fifth cause of action.

### III

### *JURISDICTIONAL ISSUES ON DISMISSAL ORDER AND CORRECTION*

### A. Introduction

The threshold issue is whether the trial court, in this administrative mandate matter, accurately assessed the legal effect of the sequence of its rulings on the motions before it in this case, for purposes of deciding whether it retained jurisdiction to render the February 2011 ruling on the District's Phase III reconsideration motion, in light of the District's earlier filing of its appeal of the Phase II reconsideration order in favor of Young, and/or the existence of the interim July 12, 2010 dismissal and correction orders.

Depending on the existence of any ongoing trial court authority to render the February 2011 ruling, and/or the effectiveness of the October order that preceded it, we will ask in part V, *post*, if the ruling on the merits of the original motion was substantively correct under the anti-SLAPP standards.

As already noted, the history of this February 2011 reconsideration order included two earlier rulings in 2010 that also arose out of the substance of the

anti-SLAPP motion: the original orders granting the motion to strike the fifth cause of action (the June orders) and a reconsideration order changing, upon motion by Young, the result of those original June orders (the October order). In the interim, the trial court had signed a July 12, 2010 order dismissing the entire action, but then, sua sponte on August 4, 2010, sent out an amended order and correction to specify that only the fifth cause of action had been dismissed.

Upon receipt of the October order upon reconsideration that ruled in favor of Young, the District did two things: it filed its own reconsideration motion in November 2010, and while the motion was awaiting its hearing date in January 2011, the District filed its own appeal of the October order. Once the February 2011 order was issued on the District's motion seeking reconsideration of the October order (during the period that the District was still appealing the Oct. order), the District proceeded to abandon its own appeal, in March 2011. The District did not have to seek permission from this court to abandon the appeal, since no record had yet been prepared. (Cal. Rules of Court, rule 8.244(b)(1).)

█ On appellate review, we must assure ourselves that the trial court had subject matter jurisdiction to render the challenged orders, and we recognize that such jurisdiction cannot be conferred by consent, waiver or estoppel. (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 13, pp. 585–586.) We next consider the scope of the trial court's authority to hear all the various motions, which will allow us to determine which of the orders are effective and are properly before us, because they were issued pursuant to an exercise of the appropriate subject matter jurisdiction.

### B. Interim Dismissal Order Problems

We examine the validity of each order in the entire sequence to determine which one effectively disposed of all the matters properly brought before the trial court, and therefore what is left of Young's amended petition for any future adjudication. Young, as the appellant, squarely raised the issue about a lack of subject matter jurisdiction in the trial court to issue the February 2011 reconsideration motion, while the District's appeal was still pending. In its respondent's brief, the District not only responds to that argument, but it also introduces a new issue, whether the trial court's July 12, 2010 order dismissing the "entire action without prejudice" was enforceable, despite the trial court's efforts to correct the error in its August 4 minute order. The trial court later expressly confirmed that correct approach in its October order granting reconsideration to Young, by referring to the court's own motion vacating the judgment of dismissal, on the grounds it had been issued as a result of an erroneous minute order.

We accordingly address the claims in the respondent's brief that "the non-appealed July 12 judgment was the product of a judicial act that, at the time, intended to dispose of Young's entire lawsuit. The judgment, even if erroneous, is final. Reversing the appealed order that granted the Hospital's anti-SLAPP motion as to the fifth cause of action would achieve nothing, because that cause of action had already been dismissed in the final judgment." The District's reasoning appears to be that the dismissal order of the entire action must have been what the court really intended to do, and any later effort to correct it was invalid as an attempt at correction of a judicial act, rather than correction of a clerical error. The District alternatively seemed to argue during the hearing on Young's reconsideration motion in October that the summary suspension was so inextricably intertwined with the final termination of privileges in April 2009, that it should make no difference which causes of action were dismissed, and they were all invalid anyway.

■ The District's reasoning in attempting to defend a clearly erroneous dismissal order makes no sense. First, a trial court has the ability, "on its own motion, to reconsider its prior interim orders so it may correct its own errors." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107 [29 Cal.Rptr.3d 249, 112 P.3d 636].) This power is inherent in the trial court's constitutional office and allows correction or change of its own interim decisions. (*Ibid.*) Different considerations apply to final orders, "which present quite different concerns." (*Id.* at p. 1105, fn. 4.)

Here, there was never any entitlement to a final order dismissing the entire action, because the District's motion to strike was expressly directed at only the fifth cause of action, and nothing more was ever noticed to the parties or brought before the trial court. We cannot consider the material in the respondent's appendix that was not shown to have been in the trial court record, i.e., a nonconformed copy of a letter from counsel for the District to the trial court, supposedly pointing out that only the fifth cause of action was the subject of its motion, as any support for the District's argument that the July 12 dismissal order, even if erroneous, somehow remained final and binding because there was no appeal filed from it.

Rather, we can determine from the copy of the motion in the file that it was always directed to the fifth cause of action, and the trial court could, and did, properly make a clerical correction of the erroneously issued, overbroad, earlier order. The August 4 order deleting language that had been erroneously inserted into the June orders was proper, there was still a pending action, and Young could appropriately seek reconsideration of the adverse June orders, which he did.

IV

## JURISDICTIONAL ISSUES ON AUTOMATIC STAYS
## PENDING APPEAL

Once Young's October reconsideration motion was granted, things got more complicated. The District filed its own reconsideration motion in November, but while it was waiting to be heard, the District in December appealed the October order. Thus, the District's appeal had the essential effect of an appeal from the recent denial of its own anti-SLAPP motion (which had been previously granted in June).

### A. Section 916 Standards

We must consider the effectiveness of the motion proceedings that followed, in light of the rules established under section 916, subdivision (a), which states in relevant part that "[e]xcept as [otherwise] provided . . . , the perfecting of an appeal *stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby*, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (Italics added.)

 In *Varian, supra*, 35 Cal.4th 180, the Supreme Court determined that an appeal from the denial of an anti-SLAPP motion automatically stays, under section 916, "all further trial court proceedings on the merits." (35 Cal.4th at p. 188.) "The purpose of the automatic stay provision of section 916, subdivision (a) 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The [automatic stay] prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' [Citation.]" (*Id.* at p. 189.)

As pointed out in Young's briefs on appeal, the ordinary effect of the December filing of the District's notice of appeal would have been to automatically stay "all further trial court proceedings on the merits." (*Varian, supra*, 35 Cal.4th at p. 188.) According to the District, the automatic stay provisions did not apply because this was a collateral or ancillary matter, that was not " 'embraced' in or 'affected' by the appeal."

*Varian, supra*, 35 Cal.4th 180 teaches us, "In determining whether a proceeding is embraced in or affected by the appeal, we must consider the appeal and its possible outcomes in relation to the proceeding and its possible results. '[W]hether a matter is "embraced" in or "affected" by a judgment [or

order] within the meaning of [section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal.' [Citation.] 'If so, the proceedings are stayed; if not, the proceedings are permitted.' (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 938 [20 Cal.Rptr.2d 841] (*Betz*).)" (*Varian, supra*, at p. 189.)

"[A]n appeal does not stay proceedings on 'ancillary or collateral matters which do not affect the judgment [or order] on appeal' even though the proceedings may render the appeal moot. (*Betz, supra*, 16 Cal.App.4th at p. 938.) For example, the Legislature has established that certain proceedings, by law, are collateral to the merits of an appeal despite their potential effect on the appeal. Thus, the Legislature, through its enactments, has established that a motion for a new trial is collateral to the judgment and may proceed despite an appeal from the judgment (See [*Estate of Waters*] (1919) 181 Cal. 584, 587 [185 P. 951] . . . ; see also *Neff v. Ernst*[, *supra*,] 48 Cal.2d 628, 634].)" (*Varian, supra*, 35 Cal.4th at p. 191.)

In *Copley v. Copley* (1981) 126 Cal.App.3d 248, 298 [178 Cal.Rptr. 842], this court treated motions to vacate a judgment under sections 473 and 663 that were filed after judgment was entered and an appeal filed, not as collateral matters but as automatically stayed by the appeal. By contrast, in *Foggy, supra*, 192 Cal.App.3d 1204, 1210–1211, the court analyzed a different statute, section 629, allowing a motion for judgment notwithstanding the verdict, and treated it as a collateral matter that the trial court could rule upon while a notice of appeal of the judgment was pending. The court found no reason to determine that such a motion was dissimilar from a statutory new trial motion, despite the divestment of trial court jurisdiction regarding the judgment itself, and said it could also be ruled upon as a collateral matter. The court relied on language in *Estate of Waters, supra*, 181 Cal. 584, in which the Supreme Court held a statutory motion for new trial was a collateral matter to the underlying judgment, based on its reading of legislative intent in amending the new trial statute. (*Foggy, supra*, at pp. 1210–1211.)

We need not resolve the validity of those two approaches using different statutes (§§ 663, 629) to make a collateral jurisdiction determination. We find more specific guidance in *Varian*, in which the Supreme Court determined that an appeal from the denial of an anti-SLAPP motion was not a collateral or ancillary matter in the same way as is an appeal from the denial of a preliminary injunction or a motion to disqualify counsel. The court explained, "Neither a motion for preliminary injunction nor a motion to disqualify counsel resolves the merits of a cause of action. Thus, the granting or denying of these motions [pending an appeal] is reconcilable with any subsequent judgment on the merits." (*Varian, supra*, 35 Cal.4th at p. 193.)

To decide whether a reconsideration motion is such a collateral matter that could proceed pending an appeal which addresses the same underlying issues, we look to the policy represented by section 916, as well as the anti-SLAPP statutory scheme and the reconsideration statute. "In order to preserve the status quo and return the parties to 'the same condition they were before the order was made' [citation], *section 916 necessarily renders any subsequent trial court proceedings on matters 'embraced' in or 'affected' by the appeal void—and not merely voidable* [citation]." (*Varian, supra,* 35 Cal.4th at p. 198, italics added.)

If the trial court errs in this respect, by committing a judicial act without jurisdiction to do so, the appellate courts can remedy the error, because "even a void judgment or order is appealable *if that judgment or order is otherwise appealable.*" (*Varian, supra,* 35 Cal.4th at p. 200, italics added.)

### B. Application: February 2011 Order Is Ineffective and Void; Result

■ Under section 916, subdivision (a), the inquiry is whether the perfecting of the District's appeal removed jurisdiction over the reconsideration issues from the superior court, such that the phase III motion proceedings were "embraced therein or affected thereby" the October ruling that was on appeal. (§ 916, subd. (a).) The February 2011 postorder proceedings were the District's duplicative efforts to seek to " 'enforce, vacate or modify [the] appealed judgment or order.' " (*Varian, supra,* 35 Cal.4th at pp. 189–190.) Under section 1008, subdivision (g), the denial of a reconsideration motion is not separately appealable. However, if the underlying order that was the subject of reconsideration is appealable, the denial of reconsideration is reviewable as part of an appeal from the underlying order. Where reconsideration is granted, appealability should likewise depend on the nature of the underlying order. In this case, the underlying order was an appealable one under the anti-SLAPP statute. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

We are guided by *Varian's* statement: "In determining whether a proceeding is embraced in or affected by the appeal, we must consider the appeal and its possible outcomes in relation to the proceeding and its possible results." (*Varian, supra,* 35 Cal.4th at p. 189.) The subject of the October reconsideration order was the merits of the ruling on the District's anti-SLAPP motion, and Young was arguing that his fifth cause of action should not have been stricken. When the trial court agreed, the District filed an appeal. The District could not likewise pursue its own reconsideration motion in the trial court to reverse that reconsideration, because " '[t]he trial court's power to enforce, vacate or modify an appealed judgment or order is suspended while the appeal is pending.' " (*Id.* at pp. 189–190.)

These authorities indicate that the District's motion for reconsideration, which essentially sought to reinstate the original grant of its anti-SLAPP motion to strike, was not a matter collateral to the previous orders, but rather part of the progression on the same anti-SLAPP issues. In this context, the second reconsideration motion did not amount to any postorder remedy that was expressly statutorily authorized to be heard as a collateral matter, after the same subject matter ruling was appealed by the same moving party. (See *Foggy, supra*, 192 Cal.App.3d 1204, 1213.) Section 1008, subdivision (g) indicates that an order denying a motion for reconsideration is not separately appealable, and any appellate rights concerning it will depend upon the appealable nature of the underlying order. Likewise, when the order grants reconsideration, the statute does not indicate that it gains a collateral nature that would allow interim trial proceedings on the same subject matter to be conducted. When the District chose to appeal the October order, the trial court was divested of jurisdiction to continue to reconsider the same issues. (§ 425.16, subd. (i).)

Even though some legislative enactments, such as new trial statutes, allow specified collateral proceedings to take place despite an appeal from the judgment, such proceedings in many cases are addressed not to the merits of the decision, but rather to the fairness of the procedures followed at trial. For example, section 657 allows new trials to be granted where procedural protections have failed or the decision was not supported by the evidence. (See *Estate of Waters, supra*, 181 Cal. 584, 587; see also *Neff v. Ernst, supra*, 48 Cal.2d 628, 634.) Here, however, both the anti-SLAPP and reconsideration proceedings went directly to the merits of any District entitlement to relief, as that relief is substantively defined and restricted in the anti-SLAPP statutory scheme, and the appeal did likewise.

Under an alternative analysis set forth in *Varian, supra*, 35 Cal.4th at page 190, the February 2011 postorder proceedings would impermissibly adversely affect the effectiveness of the pending appeal, because "the possible outcomes on appeal and the actual or possible results of the proceeding are irreconcilable," or potentially so. (*Ibid.* [stating in comparison that an appeal from a judgment on the pleadings precludes a trial court from granting leave to amend the complaint because affirmance of the judgment is irreconcilable with an order granting leave to amend]; see *Olson v. Superior Court* (1969) 274 Cal.App.2d 311, 314 [79 Cal.Rptr. 136].)

At all times, the main relief the District was seeking was an anti-SLAPP order striking and dismissing a cause of action on the merits. If the District's appeal of the October reconsideration order (in favor of Young) had been successful, the District might have been able to have its original June orders granting its motion reinstated, or, possibly, an appellate court could merely

have granted an open reversal to rehear the reconsideration motion. It does not make any difference that the appellate record had not yet been prepared, because jurisdiction had already been transferred, even though the process was only beginning. (Cal. Rules of Court, rule 8.244(b)(1).) Any appellate relief might or might not have matched the trial court relief that the District was seeking in its own reconsideration proceedings that resulted in the February 2011 order.

Whether those alternate procedural tracks were always irreconcilable need not now be determined. The point is that both tracks address the same substantive ruling on the anti-SLAPP issues, and only the appellate court could have had subject matter jurisdiction on those same issues, once the appeal was perfected. It was a waste of judicial resources for dual tracks to be followed, particularly since only the fifth cause of action was affected and the other causes of action would have to be separately adjudicated.

For those reasons, we conclude that the trial court lacked subject matter jurisdiction to continue to entertain the District's reconsideration motion, as of the time that the District filed its appeal of the October order that reconsidered the original grant of the District's motion to strike. By seeking appellate relief that would have reinstated the original grant of the District's motion to strike, the District's filing of its notice of appeal ousted the trial court of jurisdiction to continue to consider the same substantive issues. Thus, when the trial court issued its February 2011 order, it was a void act.

■ " 'When, as here, there is an appeal from a void judgment, the reviewing court's jurisdiction is limited to reversing the trial court's void acts.' " (*Varian, supra*, 35 Cal.4th at p. 200, quoting *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 [107 Cal.Rptr.2d 149, 23 P.3d 43].) The effect of this reversal of the February 2011 order is essentially to reinstate the October order that denied the District's anti-SLAPP motion to strike.

V

*MERITS OF RULING DENYING MOTION TO STRIKE*

■ For purposes of addressing the parties' alternative arguments concerning the merits of the rulings on the underlying special motion to strike, we will assume arguendo that the trial court retained subject matter jurisdiction within the meaning of section 916 to proceed upon the District's reconsideration motion, despite our doubts that it could have done so properly. Section 425.16, subdivision (i) allows an appeal from an order either granting or denying such a motion. Focusing on the merits of the trial court's October

order denying the motion to strike, since that order must be reinstated by the trial court upon remand, we consider its validity in the context of free speech and petitioning concerns arising from hospital peer review, as those concerns are addressed in the anti-SLAPP statutory scheme.

In this factual and procedural context, the merits of any futility exception to the exhaustion of remedies doctrine of administrative law are also at stake, as asserted by Young in opposition to the motion to strike. The overall question is whether the allegations of his administrative mandamus petition, in the fifth cause of action seeking relief from the summary suspension, fall within the scope of the anti-SLAPP statutory definitions. Did Young's court action for a writ of administrative mandate to compel a hearing on the validity of his summary suspension necessarily "arise out of" protected free speech conduct, in the hospital peer review context? (See *Navellier v. Sletten, supra,* 29 Cal.4th 82, 88; § 425.16, subd. (b)(1).)

## A. Anti-SLAPP Standards

■ In anti-SLAPP analysis, we accept as true Young's pleaded facts. (See *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733 [64 Cal.Rptr.3d 867].) The evidence of the moving party, the District, is considered for whether it defeats, as a matter of law, the evidence submitted by Young. (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1267, fn. 2 [99 Cal.Rptr.3d 805] (*Hylton*).) We do not resolve the merits of the overall dispute, but rather identify whether its pleaded facts fall within the statutory purpose, "to prevent and deter 'lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' " (*Varian, supra,* 35 Cal.4th 180, 192.)

In the fifth cause of action, Young sought judicial review of the administrative record, an order for reinstatement and costs, and a determination that the summary suspension should be vacated, by alleging that it was not carried out properly by a qualified committee, the review of his records was done improperly, and the suspension was not supported by substantial evidence.

■ Administrative adjudications that are quasi-judicial in nature are reviewable through administrative mandamus under section 1094.5, "subject to the statutes governing the particular agency. [Citations.]" (9 Witkin, Cal. Procedure, *supra,* Administrative Proceedings, § 148, p. 1281.) Section 1094.5, subdivisions (b) and (c) require determinations of whether the agency has proceeded in the manner required by law, if the order or decision is supported by the findings, or if the findings are supported by the evidence. (See 8 Witkin, Cal. Procedure, *supra,* Extraordinary Writs, § 263,

pp. 1171–1172.) The basic requirements for mandamus to issue in the trial court include showings of: "(a) a clear, present, (and usually ministerial) duty on the part of the respondent; (b) a clear, present, and beneficial right in the petitioner, to the performance of that duty. In the absence of a showing of this correlative duty and right, the writ will be denied. [Citations.]" (8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, § 74, p. 954.)

## B. "Arising from" Issues Presented

These anti-SLAPP motion proceedings intervened before the trial court reached any substantive issues concerning Young's entitlement to relief in mandamus. The motion to strike and opposition raised issues about whether the fifth cause of action was "triggered by protected activity" or "arose" from such. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*City of Cotati*).) The trial court was asked to address whether the District's alleged acts underlying this cause of action were, in and of themselves, acts carried out "in furtherance of the right of petition or free speech." (*Ibid.*)

 The principal thrust of the claim, in terms of any "allegedly wrong-ful and injury-causing conduct . . . that provides the foundation for the claim," will determine the applicability of the anti-SLAPP statutory scheme. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189 [6 Cal.Rptr.3d 494].) If the core injury-producing conduct by the defendant that allegedly gave rise to the plaintiff's claim is properly described with only collateral or incidental allusions to protected activity, then the claim does not arise out of protected speech or petitioning activity. (*Id.* at p. 188.)

The resolution of these anti-SLAPP issues depends upon the initial defini-tion in section 425.16, subdivision (b)(1), of the coverage of the statutory scheme, of any "cause of action against a person *arising from any act of that person in furtherance of the person's right of petition or free speech* . . . in connection with a public issue [that] shall be subject to a special motion to strike . . . ." (Italics added.) The question should be whether the plaintiff is seeking relief from the defendant for its protected communicative acts. (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 806 [63 Cal.Rptr.3d 575].) As referred to in *Varian, supra*, 35 Cal.4th at page 193, " '[t]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights.' " (See *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1317 [9 Cal.Rptr.3d 844].) Absent such coverage, the trial court need not proceed to the second prong of the anti-SLAPP analysis, whether the plaintiff can establish a probability of prevailing on his or her claim. (*San Ramon, supra*, 125 Cal.App.4th 343, 357.)

"Even if the conduct of individual public officials in discussing and voting on a public entity's action or decision could constitute an exercise of rights protected under the anti-SLAPP statute[,] . . . this does not mean . . . litigation challenging a public entity's action or decision always arises from protected activity." (*San Ramon, supra,* 125 Cal.App.4th 343, 346–347.) An act of governance mandated by law, without more, is not an exercise of free speech or petition. (*Id.* at p. 354.)

 It is an equally important public policy concern that the anti-SLAPP statute should not be interpreted in a manner that "would significantly burden the petition rights of those seeking mandamus review for most types of governmental action. Many of the public entity decisions reviewable by mandamus or administrative mandamus are arrived at after discussion and a vote at a public meeting. . . . If mandamus petitions challenging decisions reached in this manner were routinely subject to a special motion to strike . . . it would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power, which is at the heart of those remedial statutes. It would also ironically impose an undue burden upon the very right of petition for those seeking mandamus review in a manner squarely contrary to the underlying legislative intent behind [the anti-SLAPP statute]." (*San Ramon, supra,* 125 Cal.App.4th at pp. 357–358, citations omitted.)

In *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1218 [104 Cal.Rptr.3d 692] (*Graffiti*), the court reviewed an anti-SLAPP ruling and decided that the lawsuit challenging a city's decision to terminate a contract, allegedly in violation of competitive bidding laws, did not "arise out of" the city's protected speech, even though the decision was reached in an official proceeding. Thus, the losing contractor could make claims about the city's conduct, without running afoul of anti-SLAPP protections. The court explained that even though the city officials had engaged in deliberations, their mistake in ignoring applicable law did not mean the city was exercising its right of petition or free speech in doing so. (*Id.* at pp. 1224–1225; *San Ramon, supra,* 125 Cal.App.4th at pp. 353–355, 357.) "The substance of the City's decision was not protected activity." (*Graffiti, supra,* at p. 1224.)

### C. Peer Review Protections; Limitations and Analysis

 " 'The governing bodies of acute care hospitals have a legitimate function in the peer review process. In all peer review matters, the governing body shall give great weight to the actions of peer review bodies . . . .' [Citations.]" (*Nesson v. Northern Inyo County Local Hospital Dist.* (2012) 204 Cal.App.4th 65, 80 [138 Cal.Rptr.3d 446] (*Nesson*); see *Medical Staff of Sharp*

*Memorial Hospital v. Superior Court* (2004) 121 Cal.App.4th 173, 185 [16 Cal.Rptr.3d 769].) Both the governing body (the Board) and the peer review bodies (MEC and JRC) can take corrective action on staff issues, " 'in the interest of maintaining and enhancing quality patient care.' " (*Nesson, supra*, at p. 80, quoting Bus. & Prof. Code, § 809.05, subd. (d).) A hospital's "determination of the factual issues as to the necessity of peer review actions is entitled to deference and it should not be faulted for considering patient safety as its principal obligation." (*Nesson, supra*, at p. 80.)

Even though the District had such official duties in the peer review area, its acts of governance do not necessarily amount to its own exercise of free speech or petition rights. (*San Ramon, supra*, 125 Cal.App.4th 343, 354.) It is possible that Young's petition to obtain judicial review of the District's summary suspension decision did not arise from the protected sphere of activity. (*Id.* at pp. 346–347.) His request for judicial relief from an administrative decision should be distinguished from requests for damages that are fundamentally based on alleged injury arising from such peer review activity.

For example, in *Kibler, supra*, 39 Cal.4th 192, 196–197, the Supreme Court determined that the anti-SLAPP procedure could properly be raised by a hospital district in defense of a lawsuit, on tort damages theories, that was brought by a hospital staff physician and that directly arose out of peer review recommendations. That plaintiff was seeking damages under theories including defamation, abuse of process, and interference with his practice, all of which arose out of the "hospital's peer review procedure," which was a type of " 'official proceeding authorized by law' " defined and protected by section 425.16, subdivision (e)(2). (*Kibler, supra*, at p. 199.)

Accordingly, in *Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 56–57 [117 Cal.Rptr.3d 805] (*Smith*), the appellate court relied on *Kibler, supra*, 39 Cal.4th 192, to assume that the anti-SLAPP procedures covered an action by a dismissed physician who was seeking damages and injunctive relief against hospital defendants. That plaintiff was claiming that hospital staff caused him damages when they improperly refused to accept and process his reapplication after a suspension decision and after his subsequently court-ordered term of privileges to practice had expired. The court analyzed the case by assuming that such allegations about financial harm from a wrongful summary suspension arose out of the hospital defendants' acts, which were committed pursuant to protected official peer review activity under the definitions of the anti-SLAPP statute. (*Smith, supra*, at pp. 56–57.) Damages could not be awarded on the basis of such protected activity.

In *Nesson, supra*, 204 Cal.App.4th 65, the gravamen of each of the dismissed doctor's claims for damages (contract and unlawful discrimination)

and injunctive relief was that the hospital acted wrongfully when it terminated his privileges based on an earlier summary suspension. (*Id.* at p. 83.) "The first prong of analysis 'under the anti-SLAPP statute focuses on the acts on which liability is based, not the gestalt of the cause of action . . . . ' [Citation.]" (*Ibid.*) The dismissed doctor could not show that his causes of action were anything other than claims made in connection with and arising from the protected activity, and his complaint for damages was properly stricken.

In our case, even though hospital peer review proceedings may qualify as "official proceedings" under anti-SLAPP definitions, we must still determine whether all of Young's fifth cause of action "arose out of" the District's protected official activity. (See § 425.16, subd. (e)(1).) Young seeks relief in administrative mandamus against an allegedly wrongful summary suspension. Under section 1094.5, he has a right to seek such relief, because the Legislature has recognized that a judicial remedy may be appropriate where an administrative decision is sufficiently flawed. (*San Ramon, supra*, 125 Cal.App.4th at pp. 357–358.) Young should be able to attempt to show that the District had an enforceable duty grounded in its bylaws, and he may assert a right to proper performance of such a duty, to allow him the requested review of his summary suspension. (8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, § 74, p. 954.)

Similarly, even though a hospital peer review proceeding qualifies as an "official proceeding" under another anti-SLAPP definition, we must still determine whether the basis of his claim arises out of "any written or oral statement or writing made in connection with an issue under consideration" by the peer review proceeding. (§ 425.16, subd. (e)(2).) Young's fifth cause of action alleges that he is entitled to judicial review of the administrative decision, and he does not seek damages on tort theories. He attacks the summary suspension as not carried out properly by a qualified committee, and claims the review of his records was done improperly. We think this claim of entitlement to judicial review of allegedly prejudicial administrative action is based on and arose out of his statutory rights under section 1094.5, and is separate and different from an action for damages that arose out of the content of the allegedly wrongful peer review statements, such as the courts in *Kibler, supra*, 39 Cal.4th 192 and *Smith, supra*, 190 Cal.App.4th 40, were considering (damages for defamation or business interference). "The substance of the [District's] decision was not protected activity." (*Graffiti, supra*, 181 Cal.App.4th at p. 1224.) The claim here is avoidance of fair procedure or his judicial review hearing rights.

Even if a cause of action was "triggered" by protected activity, it does not always arise from it. (*City of Cotati, supra*, 29 Cal.4th 69, 78.) When we

examine the alleged acts that underlie the fifth cause of action, we conclude Young is principally seeking judicial relief from actions of an administrative body that denied him a hearing to which he was otherwise entitled, and those actions are independent from any protected elements of the claims. The anti-SLAPP statute should not be interpreted to impose an undue burden upon Young's right to petition for court review of administrative action that was in the nature of governance. (*San Ramon, supra,* 125 Cal.App.4th at pp. 357–358.)

Because of our conclusions that the anti-SLAPP statutory protections do not clearly apply as a matter of law to this fifth cause of action, this court need not reach the second portion of the statutory test under the anti-SLAPP statute, i.e., whether Young can establish a probability that he will prevail on his claims (e.g., his futility of exhaustion of remedies regarding the intertwined decisions). (*Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d 465, 475; § 425.16, subd. (b)(1); *Hylton, supra,* 177 Cal.App.4th 1264, 1271.) We reverse the February 2011 order with directions to the trial court to reinstate its October order, and to allow such further proceedings as are appropriate on the entire amended petition.

## DISPOSITION

The February 9, 2011 order is reversed with directions to the trial court to reinstate its October 26, 2010 order and to allow such further proceedings as are appropriate on the entire amended petition. Costs on appeal are awarded to appellant.

McConnell, P. J., and Irion, J., concurred.