Filed 5/17/13  Teledyne RD Instruments v. Rowe Technologies CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TELEDYNE RD INSTRUMENTS, INC., et al., | D062330 |
| Plaintiffs, Cross-defendants and Respondents, | |
| v. | (Super. Ct. No. 37-2011-00096603-CU-BT-CTL) |
| ROWE TECHNOLOGIES, INC., et al., | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Reversed and remanded with directions.

DLA Piper US, Robert W. Brownlie and Veronica L. Jackson for Defendants, Cross-complainants and Appellants.

Deforest, Koscelnik, Yokitis, Skinner & Berardinelli, Will S. Skinner and Walter P. Deforest; Knobbe, Martens, Olson & Bear and Boris Zelkind, for Plaintiffs, Cross-defendants and Respondents.

This is an appeal from an order granting an anti-SLAPP[1] motion and striking two causes of action from a cross-complaint. We hold the stricken causes of action did not arise from activity protected by the anti-SLAPP statute and therefore reverse.

## I.

## FACTUAL BACKGROUND

In August 2005, Teledyne Investment, Inc. (TII) entered into a stock purchase agreement with RD Instruments, Inc. (RDI); the Rowe Family Trust; Francis Rowe; and Elaine Rowe to buy all of the stock of RDI. After the stock purchase, RDI was renamed Teledyne RD Instruments, Inc. (TRDI) and continued in the business of underwater acoustics technology. TII later assigned its rights under the stock purchase agreement to Teledyne Technologies, Incorporated (TDY). The stock purchase agreement contained provisions that prohibited the sellers or their affiliates from competing with TRDI/TDY and from soliciting its employees for five years (hereafter the noncompetition and nonsolicitation clauses).

In September 2005, TDY employed Steven Rowe, Daniel Rowe, Steve Maier, Mark Vogt, John Romeo, and Changle Fang. Each of them signed an agreement promising "promptly [to] disclose to TDY all inventions, computer programs, improvements, concepts, or discoveries which [he] may make, either solely or jointly

---

1      SLAPP is an acronym for strategic lawsuit against public participation, i.e., a lawsuit "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., § 425.16, subd. (a); see *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 & fn. 1 (*Equilon*).)

with others, during [his] employment or within six months after termination of such employment that may be within the existing or contemplated scope of TDY's business" (hereafter the disclosure clause). Francis Rowe previously had signed an agreement with RDI that contained a similar disclosure clause.

In September 2009, Rowe Technologies, Inc. (RTI) was formed. RTI competes with TDY in the underwater acoustics technology business. By December 2009, Steven Rowe, Daniel Rowe, Steve Maier, Mark Vogt, John Romeo, and Changle Fang were all employees of RTI.

## II.

## PROCEDURAL BACKGROUND

In August 2011, TRDI; Teledyne RD Technologies (Shanghai) Co., Ltd.; and TDY (collectively Teledyne) filed a complaint against RTI; Kunming Rowe Marine Instruments Technology Development Co., Ltd.; the Rowe Family Trust; Francis Rowe; Elaine Rowe; Steven Rowe; Daniel Rowe; Steve Maier; Mark Vogt; John Romeo; and Changle Fang (collectively Rowe). Teledyne sought damages and injunctive relief for breach of contract, misappropriation of trade secrets, unfair competition, and several other torts.

Rowe answered the complaint, and, after filing procedurally improper counterclaims that were stricken by the trial court (see Code Civ. Proc., § 428.80 [counterclaims abolished]), filed a cross-complaint against Teledyne. In the cross-complaint, Rowe alleged the disclosure clause was unenforceable because it interfered with the proprietary rights of a competitor who had hired a former TDY employee, and

3

made it more expensive for the competitor to hire such an employee. Rowe also alleged the noncompetition and nonsolicitation clauses unfairly restricted competition and employee mobility because the five-year restriction was longer than reasonably necessary to protect TDY's investment. According to Rowe, Teledyne "filed [its] sham suit for anticompetitive and strategic reasons," namely, "to increase a perceived rival's costs and to divert its perceived rival's resources from product development." In the first and second causes of action of the cross-complaint, Rowe alleged the noncompetition, nonsolicitation, and disclosure clauses violated Business and Professions Code section 16600[2] and the unfair competition law (UCL; Bus & Prof. Code, § 17200 et seq.); and it sought a declaration of their unenforceability and a permanent injunction against their enforcement.

Teledyne filed a special motion to strike the first and second causes of action of Rowe's cross-complaint under the anti-SLAPP statute. Teledyne argued those claims were subject to the statute because they arose from Teledyne's act of filing a complaint against Rowe. Teledyne further argued Rowe could not demonstrate a probability of success on the merits because (1) the challenged claims are barred by the litigation privilege (see Civ. Code, § 47, subd. (b)(2) [publication or broadcast in judicial proceeding is privileged]); (2) the noncompetition and nonsolicitation clauses are necessary to protect Teledyne's investment and do not restrain competition for an

2    Business and Professions Code section 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

4

unreasonably long time period; and (3) the disclosure clause is necessary to protect Teledyne's trade secrets.

Rowe opposed Teledyne's special motion to strike. Rowe argued its first and second causes of action did not trigger the anti-SLAPP statute because those claims arose from Teledyne's use of illegal agreements to restrict employee mobility and competition, and the allegation that Teledyne filed its action as part of a plan to drive Rowe from the market was "only incidental to the principal thrust of [those claims]." Rowe also argued it had a probability of prevailing on the challenged claims for three reasons: (1) the litigation privilege did not apply because Rowe could prove the claims without reference to Teledyne's lawsuit; (2) the disclosure clauses were void under Business and Professions Code section 16600 and interpretive case law; and (3) Teledyne's use of the void disclosure clause constituted an unlawful business practice under the UCL.

The trial court granted Teledyne's special motion to strike. The court ruled:

"The gravamen of the [first] and [second] counts alleged in the cross-complaint is the protected filing of the complaint. The Rowe parties are the masters of their own pleadings, and chose to allege in paragraph 36 of the cross[-]complaint that plaintiffs 'filed this sham suit for anticompetitive and strategic reasons.' Defendants were, o[f] course, free to attempt to demonstrate <u>as a defensive matter</u> that the restrictive covenants they signed in 2005 . . . were illegal and/or unenforceable; indeed, they so alleged in their affirmative defenses. What they were <u>not</u> free to do, however, was (in effect) sue plaintiffs for having sued them. This is classic SLAPP territory."

The court also ruled Rowe could not show a probability of prevailing on its first and second causes of action because they were barred by the litigation privilege (Civ. Code, § 47, subd. (b)(2)) and the *Noerr-Pennington* doctrine (*Mine Workers v. Pennington*

5

(1965) 381 U.S. 657, 670 ["Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition."]; *Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127, 138 [antitrust laws do not apply to "solicitation of governmental action with respect to the passage and enforcement of laws"]).  Finally, the court ruled Teledyne was entitled to attorney fees under the anti-SLAPP statute, and ordered it to file a fee motion.

Rowe filed a timely notice of appeal from the order granting Teledyne's anti-SLAPP motion.  (See Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13) [order granting anti-SLAPP motion is appealable].)

III.

DISCUSSION

Rowe contends the trial court erred by granting Teledyne's special motion to strike because the causes of action of the cross-complaint for violations of Business and Professions Code section 16600 and the UCL do not arise from any act protected by the anti-SLAPP statute, and neither cause of action is completely barred by the litigation privilege or the *Noerr-Pennington* doctrine.  Teledyne contends the trial court ruled correctly because Rowe sued Teledyne for suing Rowe, and the challenged causes of action fail as a matter of law.  Both parties seek an award of attorney fees on appeal.

As we shall explain, the two causes of action challenged by Teledyne did not arise from any protected activity and thus were not subject to being stricken under the anti-SLAPP statute.  We therefore reverse the order granting Teledyne's special motion to

6

strike and remand the matter to the trial court for a determination of Rowe's entitlement to attorney fees on appeal.

A.    *General Principles Governing Anti-SLAPP Motions*

Under the anti-SLAPP statute, a cause of action against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or the California Constitution in connection with a public issue" is subject to a special motion to strike unless the party asserting the claim establishes a probability of prevailing on the merits.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  As pertinent to this appeal, an act in furtherance of the constitutional right of petition or free speech includes any statement made in a judicial proceeding or in connection with an issue under consideration by a judicial body.  (*Id.*, § 425.16, subd. (e)(1), (2).)  "Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest."  (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.)

When a party files a special motion to strike, the anti-SLAPP statute requires the court to engage in a two-step process.  First, the court determines whether the moving party has made a threshold showing that the challenged cause of action arises from protected activity.  (*Equilon*, *supra*, 29 Cal.4th at p. 67.)  The moving party's burden is to show the act from which the challenged cause of action arises is within the scope of one of the categories listed in Code of Civil Procedure section 425.16, subdivision (e).  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)  Second, if the court finds the moving party has made such a showing, it determines whether the nonmoving party has

7

shown a probability of prevailing on the claim, by pleading a legally sufficient claim and supporting it with evidence that, if credited, would be sufficient to sustain a judgment. (*Id.* at pp. 88-89.) In making these determinations, the court considers the pleadings and any affidavits supporting or opposing the motion. (Code Civ. Proc., § 425.16, subd. (b)(2).) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier*, at p. 89.) We review an order granting an anti-SLAPP motion de novo. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; *Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1103.)

B.      *Analysis of Teledyne's Anti-SLAPP Motion*

The first step of our de novo review is to determine whether the causes of action Teledyne moved to strike "aris[e] from" an act in furtherance of its constitutional right of petition or free speech within the meaning of the anti-SLAPP statute. (Code Civ. Proc., § 425.16, subd. (b)(1).) The statutory phrase "cause of action . . . arising from" (*ibid.*) means the moving party's act underlying the nonmoving party's cause of action "must *itself* have been an act in furtherance of the right of petition or free speech" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*)). "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the [moving party's] protected free speech or petitioning activity." (*Navellier*, *supra*, 29 Cal.4th at p. 89.) "The principal thrust of the claim, in terms of any 'allegedly wrongful and injury-causing conduct . . . that provides the foundation for the claim,' will determine the applicability of

8

the anti-SLAPP statutory scheme." (*Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 55 (*Young*).) Teledyne had the burden to show the challenged causes of action arose from activity protected by the anti-SLAPP statute; and to determine whether Teledyne met that burden, we examine the pleadings and any affidavits submitted in connection with the anti-SLAPP motion. (Code Civ. Proc., § 425.16, subd. (b)(2); *Navellier*, at pp. 88-89.)

In its cross-complaint, Rowe complained of Teledyne's use of allegedly illegal contractual provisions. In the first paragraph, Rowe alleged the disclosure clause "improperly interferes" with the mobility of former Teledyne employees; and for that reason, the clause is void under Business and Professions Code section 16600 and its use constitutes an unlawful and unfair business practice under the UCL. In the second paragraph, Rowe similarly alleged that the noncompetition and nonsolicitation clauses "unreasonably and unlawfully restrict[] competition for five years," and their use therefore constitutes an unfair and unlawful business practice under the UCL. Rowe further alleged that Teledyne "filed this sham suit for anticompetitive and strategic reasons," and that the timing of the suit and the assertion of "claims based on unenforceable and unlawful agreements that restrain employee mobility and competition[] demonstrate [Teledyne's] use of litigation as a sham to increase a perceived rival's costs and to divert its perceived rival's resources from product development." All of these allegations were expressly incorporated into the first cause of action for violation of section 16600 and the second cause of action for violation of the UCL. As part of these causes of action, Rowe sought a judgment declaring the challenged contractual

9

provisions void and unenforceable and an injunction prohibiting Teledyne from enforcing or using them.

In a declaration submitted in opposition to the anti-SLAPP motion, Daniel Rowe, the chief executive officer of RTI, stated that he had signed an agreement containing the disclosure clause when previously employed by TRDI. Mr. Rowe further stated that he is in charge of RTI's hiring, and he would not want to hire an individual who was required to disclose to a competitor any inventions the individual created for RTI.

In responses to interrogatories from Teledyne, which were attached to a declaration of Teledyne's counsel submitted in support of the anti-SLAPP motion, Rowe stated the facts supporting its contentions that Teledyne had violated Business and Professions Code section 16600 and the UCL.[3] In the responses, Rowe explained how

---

[3] Rowe contends the interrogatory responses should not be considered because they are neither pleadings nor affidavits, the only types of documents specifically mentioned in Code of Civil Procedure section 425.16, subdivision (b)(2). We disagree. The responses were attached as an exhibit to a declaration that was executed in California under penalty of perjury and thus was legally equivalent to an affidavit. (Code Civ. Proc., § 2015.5; *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1050.) In any event, on an anti-SLAPP motion the parties may "tender evidence of specific facts in the form of affidavits, *or admissible discovery material*." (*Nesson v. Northern Inyo County Local Hospital Dist.* (2012) 204 Cal.App.4th 65, 77, italics added; see Code Civ. Proc., § 2030.410 [propounding party may use interrogatory answer against responding party at trial "or any other hearing in the action"].)

Rowe also contends the responses were given to interrogatories seeking the facts underlying the procedurally improper counterclaims and were rendered a nullity when the trial court struck the counterclaims. Again, we disagree. Rowe cites no authority to support this contention. Moreover, Rowe reasserted the procedurally improper counterclaims in a procedurally proper cross-complaint, and it does not contend the facts underlying its two pleadings differed in any material way. Rowe is thus bound by its responses. (See *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270, 275 ["responses to interrogatories are binding upon the party responding"]; *Universal*

10

the disclosure clause made it "less attractive" for a competitor to hire a former Teledyne employee purportedly bound by the clause and also interfered with the proprietary rights of a competitor that hired a former Teledyne employee who then made an invention within six months of departing from Teledyne. Rowe also stated that the five-year term of the noncompetition and nonsolicitation clauses was excessive because, "[b]ased on the annual sales of products, [Teledyne] recouped [its] investment well before five years and then some."

Examination of the allegations of the cross-complaint, the declaration of Daniel Rowe, and the interrogatory responses submitted in connection with the special motion to strike reveals that the gravamen or principal thrust of Rowe's first two causes of action is that the disclosure, noncompetition, and nonsolicitation clauses are illegal and unenforceable. Teledyne's use of these clauses thus constitutes the "'allegedly wrongful and injury-causing conduct . . . that provides the foundation for the claim[s].'" (*Young*, *supra*, 210 Cal.App.4th at p. 55.) In other words, the first and second causes of action of Rowe's cross-complaint are "*based on*" Teledyne's business practice of inserting allegedly unlawful provisions in its contracts. (*Navellier*, *supra*, 29 Cal.4th at p. 89.) Since this business practice occurred years before Teledyne sued Rowe, Rowe's claims do not "aris[e] from any act of [Teledyne] in furtherance of [its] right of petition or free speech" within the meaning of the anti-SLAPP statute. (Code Civ. Proc., § 425.16, subd. (b)(1); see *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1309 (*D'Ausilio*)

*Underwriters Ins. Co. v. Superior Court* (1967) 250 Cal.App.2d 722, 731 ["sworn statement as to the contention of the party in answer to a relevant interrogatory is binding"].)

11

[declaratory relief claim involving actual dispute between parties regarding validity of contract provision was not a SLAPP].)

In support of its contrary conclusion that Rowe's first and second causes of action fall within "classic SLAPP territory," the trial court cited paragraph 36 of the cross-complaint, where Rowe alleged that Teledyne "filed this sham suit for anticompetitive and strategic reasons." Teledyne cites several other references to its lawsuit in Rowe's cross-complaint and interrogatory responses to argue the trial court properly granted the anti-SLAPP motion. In paragraph 37 of the cross-complaint, Rowe alleged: "Filing this action at the time [it] did, as well as alleging claims based on unenforceable and unlawful agreements that restrain employee mobility and competition, demonstrate [Teledyne's] use of litigation as a sham to increase a perceived rival's costs and to divert its perceived rival's resources from product development." Similarly, in paragraph 53, Rowe alleged: "On information and belief, [Teledyne] filed this suit as a sham to increase [Rowe's] costs and delay product development. Therefore, such act is unlawful and unfair within the meaning of [the UCL]." In paragraphs 44 through 47, which concerned its request for declaratory relief, Rowe alleged the existence of an actual controversy consisting of Teledyne's claims that Rowe breached the disclosure, noncompetition, and nonsolicitation clauses and Rowe's cross-claims that those clauses are unenforceable. In its interrogatory responses, Rowe stated that "the true purpose of the litigation is to use the litigation process, as opposed to an outcome of the process, to increase defendants' costs." Based on these various statements, Teledyne argues that it "could not be . . .

12

clearer" that its lawsuit "caused the controversy," and that Rowe's cross-complaint "is an attempt to inhibit [Teledyne's] pursuit of [its] right of petition." We are not persuaded.

Teledyne's filing of its lawsuit against Rowe did not cause or give rise to the first two causes of action of Rowe's cross-complaint so as to subject them to a special motion to strike. To be sure, the act of filing a complaint constitutes an act in furtherance of the constitutional right of petition that is protected by the anti-SLAPP statute. (Code Civ. Proc., § 425.16, subd. (e)(1); *Navellier*, *supra*, 29 Cal.4th at p. 90.) But the fact that Rowe's cross-complaint "was filed after protected activity took place," or "arguably may have been 'triggered' by protected activity," does not mean the cross-complaint arose from that activity for purposes of the anti-SLAPP statute. (*Navellier*, at p. 89; see also *Cotati*, *supra*, 29 Cal.4th at pp. 76-77 ["But the mere fact an action was filed after protected activity took place does not mean it arose from that activity."].) Indeed, "[t]he Legislature expressly has provided that a cross-action may 'arise[] out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges' [citations], rather than out of that cause of action itself." (*Cotati*, at p. 77; see also *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 651 ["A compulsory cross-complaint on a 'related cause of action' against the plaintiff [citation] would rarely, if ever, qualify as a SLAPP suit arising from petition activity."].)

Here, the actual controversy giving rise to both parties' pleadings is their dispute over the validity of the disclosure, noncompetition, and nonsolicitation clauses. By its complaint, Teledyne seeks to enforce the clauses against Rowe; and by its cross-

13

complaint, Rowe seeks to void the clauses. The transactions giving rise to the dispute occurred well before and existed independent of Teledyne's commencement of litigation against Rowe. Therefore, Rowe's first and second causes of action did not "aris[e] from" Teledyne's lawsuit and were not subject to a special motion to strike. (Code Civ. Proc., § 425.16, subd. (b)(1); see *Cotati*, *supra*, 29 Cal.4th at p. 80 [plaintiff's state court action for declaratory relief filed in response to defendants' similar federal court action was not subject to anti-SLAPP statute because both actions arose out of parties' dispute over constitutionality of ordinance]; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 933 (*Kajima*) [cross-complaint not subject to anti-SLAPP statute because it arose out of same business transactions from which complaint arose and did "not arise 'out of the litigation process itself'"].)

We also reject Teledyne's related argument that the multiple references to its "sham" litigation contained in Rowe's cross-complaint and interrogatory responses indicate Rowe is trying to stifle petitioning activity protected by the anti-SLAPP statute. A party to an ordinary private dispute cannot invoke the anti-SLAPP statute simply because the challenged pleading contains some references to the party's protected speech or petitioning activity. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.) If the reference to protected activity is only incidental to a cause of action essentially based on nonprotected activity, the anti-SLAPP statute does not apply. (*Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 272 (*Baharian-Mehr*).) "In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability

14

that is *based on* speech or petitioning activity." (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214-1215.) Hence, the court must focus on " '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the [challenged] claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.)

The repeated references to Teledyne's purportedly improper litigation activities contained in Rowe's cross-complaint and interrogatory responses were merely collateral or incidental to its causes of action. "For purposes of anti-SLAPP analysis, . . . an alleged act is incidental to a claim, and incidental to any unprotected activity on which the claim is based, only if the act is not alleged to be the basis for liability." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1183.) Thus, to determine whether or not a reference to protected activity is merely incidental, "[t]he question should be whether the [nonmoving party] is seeking relief from the [moving party] for its protected communicative acts." (*Young*, *supra*, 210 Cal.App.4th at p. 55.) Here, in its cross-complaint and interrogatory responses Rowe disparaged Teledyne's lawsuit as a "sham" and asserted the lawsuit was designed to increase Rowe's costs, but it did not seek damages or any other form of relief for Teledyne's litigation activity. Rather, on the two causes of action targeted by the anti-SLAPP motion, Rowe sought *only* a declaratory judgment that the disclosure, noncompetition, and nonsolicitation clauses were void and unenforceable and a

15

permanent injunction prohibiting Teledyne from enforcing or using such clauses.[4] Thus, Rowe's cross-complaint "does not allege that [Teledyne's] filing of [its] lawsuit gives rise to any additional liability, but that the lawsuit evidenced [Teledyne's anti-competitive use of the challenged contractual provisions]." (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1161.) In other words, Rowe's references to Teledyne's lawsuit "purport to describe [Teledyne's] pattern and practice with respect to [using the challenged contractual provisions] in general; they do not seek to impose liability based on acts taken in furtherance of [Teledyne's] right to petition the courts for the wrongs allegedly committed by [Rowe] with regard to [breaches of those provisions]." (*Kajima*, *supra*, 95 Cal.App.4th at p. 931.) Accordingly, because Rowe's "mention of protected activity is 'only incidental' to a business dispute based on nonprotected activity," the anti-SLAPP statute does not apply. (*Baharian-Mehr*, *supra*, 189 Cal.App.4th at p. 273; see also *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809 [anti-SLAPP statute inapplicable when "overall thrust of the complaint challenges the manner in which the parties privately dealt with one another . . . and does not principally challenge the collateral activity of pursuing governmental approvals"].)

We are not persuaded to reach a different conclusion by any of the cases Teledyne cites in support of its contention the anti-SLAPP statute applies to Rowe's cross-

_____

4      We reject Teledyne's suggestion that the prayer for damages and attorney fees in Rowe's cross-complaint indicates Rowe was seeking to hold Teledyne liable for its litigation activity. Rowe sought damages and fees only in connection with its claims for common law unfair competition, trade libel, and interference with prospective economic advantage. Those claims are not at issue on this appeal, however, because they were not the subject of Teledyne's anti-SLAPP motion.

complaint.  Teledyne relies on *Equilon*, *supra*, 29 Cal.4th at pages 57, 67, and *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 271, where the appellate courts held declaratory relief actions filed in response to Proposition 65 intent-to-sue notices were SLAPP's because the service of such a notice is protected activity, and without the notices there would have been no basis for the plaintiffs to seek declaratory relief regarding their compliance with Proposition 65.  Similarly, in *Navellier*, *supra*, 29 Cal.4th 82, also cited by Teledyne, the plaintiffs sued the defendant for fraudulent inducement of a release negotiated in an earlier federal lawsuit and for breach of the release.  Our Supreme Court held the anti-SLAPP statute applied because "but for the federal lawsuit and [the defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis."  (*Id.* at p. 90.)  Here, however, if Teledyne had not sued Rowe, the first two causes of action of Rowe's cross-complaint would still have a basis, namely, the parties' business dispute over the validity and enforceability of the disclosure, noncompetition, and nonsolicitation clauses.

Other cases on which Teledyne relies are also not on point.  For example, in *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 104, we held the anti-SLAPP statute applied when reports to governmental agencies, a petitioning activity protected by the anti-SLAPP statute, "formed a substantial part of the factual basis" of the challenged claims.  Likewise, in *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1368-1369, 1371, a cross-complaint was held to be a SLAPP because two of its causes of action "by definition ar[o]se from the protected activity of [the plaintiff's] filing of its complaint," the "remaining causes of action present[ed] a classic

17

case of mixed claims of protected and nonprotected activity," and the cross-complaint "include[d] a single specific allegation of [the plaintiff's] conduct causing harm to defendants that [was] not directly related to [the] filing of the complaint."  As we have already explained, however, Rowe's references to Teledyne's lawsuit in the cross-complaint and interrogatory responses did not form a substantial part of the causes of action challenged by Teledyne's anti-SLAPP motion.  The references were merely incidental to claims the principal thrust of which was that Teledyne uses the disclosure, noncompetition, and nonsolicitation clauses unlawfully to restrict competition.

In sum, we conclude the trial court erred when it ruled the gravamen of Rowe's claims for violations of Business and Professions Code section 16600 and the UCL was Teledyne's filing its complaint against Rowe and, on that basis, struck the claims pursuant to the anti-SLAPP statute.  Since those claims did not arise from any activity by Teledyne that is protected by the anti-SLAPP statute, we need not, and do not, decide whether Rowe satisfied its burden to show a probability of prevailing on those claims.  (See, e.g., *Cotati*, *supra*, 29 Cal.4th at pp. 80-81 [declining to decide whether nonmoving party established probability of prevailing when its claim did not arise from protected activity]; *Young*, *supra*, 210 Cal.App.4th at p. 59 [same].)  As a further consequence of our holding, Teledyne was not the prevailing party entitled to attorney fees incurred in connection with the anti-SLAPP motion.  (Code Civ. Proc., § 425.16, subd. (c)(1); *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 505.)  The trial court's contrary determination thus constituted error.

18

C.      *Attorney Fees on Appeal*

As noted earlier, both parties have requested an award of attorney fees on appeal. A nonmoving party who defeats an anti-SLAPP motion is entitled to recover reasonable attorney fees if the trial court finds the motion was "frivolous" or "solely intended to cause unnecessary delay." (Code Civ. Proc., § 425.16, subd. (c)(1).) A statute that authorizes an award of attorney fees for trial court proceedings also includes fees for appellate proceedings unless the statute specifically provides otherwise. (*D'Ausilio*, *supra*, 193 Cal.App.4th at p. 1309; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499.) The anti-SLAPP statute "does not preclude recovery of appellate attorney fees; hence attorney fees recoverable under the statute include appellate fees." (*Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 461.) As the prevailing party on appeal, Rowe is entitled to recover attorney fees reasonably incurred in prosecuting this appeal if the trial court finds Teledyne's anti-SLAPP motion was frivolous or filed solely to cause unnecessary delay. On remand, the trial court shall make this determination and shall determine the amount of fees (if any) to be awarded upon motion by Rowe.

DISPOSITION

The order granting Teledyne's special motion to strike under the anti-SLAPP statute and determining Teledyne was entitled to attorney fees is reversed. On remand, upon motion by Rowe the trial court shall determine Rowe's entitlement to attorney fees incurred in connection with this appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.